IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

KAREN PRIMERA,

                    Plaintiff,

        vs.

BETHEL SOLUTIONS, INC.,

                    Defendant.

Case No. 3:20-cv-00157-JMK

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Karen Primera brings two claims under the Fair Labor Standards Act ("FLSA") against her former employer, Defendant Bethel Solutions, Inc. ("Bethel"). First, Primera alleges that Bethel failed to pay overtime wages in violation of 29 U.S.C. § 207. Second, Primera alleges that Bethel retaliated against her in violation of 29 U.S.C. § 215(a)(3).

Defendant Bethel now moves for summary judgment on both counts.[1] The motion has been fully briefed.[2] For the reasons explained below, summary judgment for Defendant is **DENIED** with respect to Plaintiff's overtime claim and **GRANTED** with respect to Plaintiff's retaliation claim.

---

[1] Docket 20.
[2] *See* Dockets 23, 26.

# I.   BACKGROUND

Plaintiff Karen Primera began working for Bethel Solutions in September 2009 as an hourly AP/Payroll Clerk.[3]   Primera continued to advance at Bethel, and by March 2017, Primera was the company's H.R. Manager/Staff Accountant.[4]   The position remained hourly.   Primera earned $35 per hour, but, with overtime, her annual salary approached $100,000.[5]

On November 15, 2017, Primera was promoted to Payroll Manager.   This was a salaried position, exempt from overtime, and Primera earned $77,500 annually.[6] Primera objected to being classified as an exempt employee.[7]   In 2019, Primera requested that Bethel's CFO Kyunga Rose reassess her position.   Rose testifies that she sent Primera's job description to an outside human resources firm, which concluded that Primera fell within the definition of an exempt employee.[8]

On January 14, 2020, Rose denied Primera a raise.   She explained that Primera's current compensation was close to the median range for a "payroll supervisor," a position which aligned more closely with her duties than a "payroll manager in charge of an entire department."[9]   The next day, Primera responded by email defending her request for a salary increase and stated that:

> [I]f Bethel does not view me as a Payroll Manager and would like to look at me like a Payroll Supervisor I believe that it

---

[3]   Docket 23-1.
[4]   Docket 23-3 at 3.
[5]   *Id.*; Docket 23-4 at 134.
[6]   Docket 23-3 at 4.
[7]   *See* Docket 23 at 4–9; Docket 20-2 at 78, 126.
[8]   *See* Docket 20-38 at 3; Docket 20-39 at 2.
[9]   Docket 23-12.

should be looked at that I am put back to an hourly rate equivalent to what I am making now and my title be changed.[10]

Primera testifies that after this exchange, she spoke with Rose about her belief that she was improperly classified; Rose told her that she had been re-classified as exempt because the former controller complained about the amount of overtime Primera received.[11]

On March 2, 2020, Primera and a Bethel project coordinator had a heated disagreement over whether one employee could legally submit a timecard on behalf of another employee.[12] Primera reported the altercation to her supervisor, controller Zounee Yang, and to H.R. Director Rachel Balluta. Later that afternoon, Primera was terminated under Bethel's "at-will" employment policy.[13]

On April 28, 2020, Primera filed the present suit in Alaska Superior Court, alleging violations of the Fair Labor Standards Act (FLSA) overtime and anti-retaliation provisions.[14] The matter was removed to this Court on June 30, 2020, pursuant to 28 U.S.C. § 1331.[15]

## II.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16] The moving party has the initial burden of establishing the absence of a genuine issue of material fact.[17]

---

[10] Docket 23-13.
[11] Docket 23-4 at 275–76.
[12] *See* Docket 23 at 12–14; Docket 20 at 20.
[13] Docket 23–17.
[14] Docket 1.
[15] *Id.*
[16] Fed. R. Civ. P. 56(a).
[17] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Ultimately, a genuine dispute of material fact exists if there is sufficient evidence that a jury could return a verdict for the nonmoving party.[18]  As such, "where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."[19]  However, when the nonmoving party will carry the burden of proof, the movant may simply show that the nonmoving party lacks sufficient evidence to support its case.[20]

If the moving party meets this initial burden, the non-moving party must present specific evidence showing a genuine issue of material fact.[21]  But if the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence.[22]

When evaluating a motion for summary judgment, the court will view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor.[23]  However, the nonmoving party cannot rely upon conclusory allegations or denials to create a triable issue; it must set forth specific facts that "require a jury or judge resolve the parties' differing versions of the truth at trial."[24]

---

[18]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[19]  *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018).
[20]  *Celotex*, 477 U.S. at 323.
[21]  *Anderson*, 477 U.S. at 248–49.
[22]  *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160 (1970).
[23]  *Rookaird*, 908 F.3d at 459.
[24]  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 631 (9th Cir. 1987).

## III.   DISCUSSION

Primera alleges two separate claims under the FLSA against her former employer.  First, Primera alleges that Bethel misclassified her as an exempt employee and thus failed to pay overtime wages in violation of 29 U.S.C. § 207.  On this issue, the Court finds that a genuine issue of material fact precludes summary judgment.  Second, Primera alleges that Bethel retaliated against her in violation of 29 U.S.C. § 215(a)(3).  Here, the Court finds that Bethel is entitled to summary judgment.

### A.   Genuine Issues of Material Fact Exist as to Whether Primera was Properly Classified as Exempt

Between November 2017 and March 2020, Primera alleges that she was improperly classified as an exempt employee, and therefore did not receive overtime pay in violation of 29 U.S.C. § 207.[25]  Bethel argues that Primera was properly excluded from overtime under the FLMA's administrative exemption.[26]  The Court finds that a factual dispute exists with respect to whether Primera's primary duty included the exercise of discretion and independent judgment such that she was properly classified as exempt.

### (1)   The administrative exemption

Ordinarily, the FLSA requires employers to pay employees time and a half for overtime work.[27]  But employees who are "employed in a bona fide executive, administrative, or professional capacity" are exempt from this requirement.[28]  An employer

---

[25] Docket 1-3 at 2–3.
[26] Docket 20 at 25–32.
[27] *See* 29 U.S.C. § 207(a)(1).
[28] 29 U.S.C. § 213(a)(1).

who claims an exemption from the FLSA has the burden of showing that the exemption applies.[29]  The Supreme Court recently has held that these exemptions are to be given a fair, rather than narrow, construction against the employer.[30]

Bethel argues that Primera satisfies the "administrative exemption," which applies to any employee:

> (1) Compensated on a salary or fee basis . . . at a rate not less than $684 per week . . .;

> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.[31]

These criteria are "absolute," and Bethel must show that Primera satisfies all three.[32]  How an employee spends her time working, including the nature of her daily activities, is a question of fact, while the question of whether a particular activity falls within an exemption is a question of law.[33]  Here, the parties agree that Primera meets the first two criteria.[34]  The only issue before the Court is whether Primera's primary duty included the exercise of discretion and independent judgment with respect to matters of significance.

---

[29] *McKeen-Chaplin v. Provident Sav. Bank, FSB*, 862 F.3d 847, 850 (9th Cir. 2017).
[30] *Clarke v. AMN Servs. LLC*, 987 F.3d 848, 853 (9th Cir. 2021) (citing *Encino Motorcars LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018)).
[31] 29 C.F.R. § 541.200(a).
[32] *McKeen-Chaplin*, 862 F.3d at 850.
[33] *Bothell v. Phase Metrics*, 299 F.3d 1120, 1124 (9th Cir. 2002).
[34] Docket 23 at 20–21.

In general, the exercise of discretion and independent judgment "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."[35] Factors include, but are not limited to:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.[36]

The DOL regulations indicate that an employee must meet "at least two or three" of these factors to satisfy the administrative exemption.[37]

Additionally, an exempt employee's primary duty must "be more than the use of skill in applying well-established techniques, procedures, or specific standards

---

[35] 29 C.F.R. § 541.202(a).

[36] Id.

[37] Quintiliani v. Concentric Healthcare Sols., LLC, 944 F. Supp. 2d 738, 746 (D. Ariz. 2013), rev'd on other grounds, 672 F. App'x 643 (9th Cir. 2016) (citing Dep't of Labor Wage & Hour Div., Rules and Regulations, 69 Fed. Reg. 22143 (Apr. 23, 2004)).

described in manuals or other sources," and does not include clerical work, secretarial work, or recording and tabulating data.[38] The fact that a position "required a great deal of specialized knowledge and skill is not determinative" of whether the administrative exception applies.[39] Instead, the employee must have the power and authority to make an independent choice over matters of significance, free from immediate direction or supervision.[40] For example, an executive assistant might be exempt if he or she has been delegated authority "without specific instructions or prescribed procedures."[41] Finally, an employee does not exercise discretion simply because the employer will experience financial loss if the employee fails to perform the job properly.[42]

### (2) Application to Plaintiff

The evidence cited by Bethel does not conclusively show that Primera's primary duty included the exercise of discretion and independent judgment with respect to matters of significance.[43] The parties agree on the general contours of Primera's duties at Bethel: she produced certified and non-certified payroll for Bethel Solutions and its subsidiary companies; prepared monthly and quarterly reports; identified monies from

---

[38] 29 C.F.R. § 541.202(e).

[39] *Bothell*, 299 F.3d at 1129.

[40] *Id.* However, this does not mean that an exempt employee's decision cannot be reviewed at a higher level. *See* 29 C.F.R. § 541.202(c) (giving example of a management consultant whose proposed change in a client's business organization may have the plan reviewed by superiors before it is submitted to the client).

[41] 29 C.F.R. § 541.203(e).

[42] 29 C.F.R. § 541.202(f).

[43] The Court notes that Bethel's Argument does not include any citations to materials in the record. Bethel only cites to the record in its Factual Background. The Court assumes that Bethel incorporates those citations, and it uses its best judgment to match Bethel's assertions in its Argument to the citations in its Factual Background.

accounts receivable; had a role in implementing new software programs for human resources; and, at times, took on human resources duties.[44] They disagree about the nature of those duties, and the extent to which Primera was permitted to make independent decisions, free from immediate supervision or prescribed procedures. Bethel characterizes Primera's role as managerial,[45] while Primera describes her role as entering payroll data and completing discrete assignments, without any authority to deviate from set policies and procedures.[46]

Bethel argues that, as payroll manager, Primera exercised discretion to "analyze the timecards, identify problem areas, contact supervisors, obtain necessary corrections or make decisions to run payrolls without corrections and correct the payrolls later," and could advise that the company run a special payroll.[47]

Primera's deposition, upon which Bethel predominantly relies, does not support this characterization.[48] Primera describes her payroll duties as entering data, and

---

[44] *See* Docket 23 at 6, 21–22; Docket 20 at 28–30.
[45] *See* Docket 20 at 28–30.
[46] Docket 23 at 6, 14.
[47] Docket 20 at 29 (citing Docket 20-2).
[48] While Bethel uses Primera's deposition to support its assertions, it appears to argue in its Reply that Primera's deposition testimony is per se insufficient to create an issue of fact. *See* Docket 26 at 4–5. However, Bethel operates under the mistaken belief that Primera carries the burden of proof to show that she is non-exempt. *Id.* at 4. Moreover, as described in this Order, Primera's deposition testimony provides specific, detailed facts as to the nature of her duties. *Compare Alexander v. Servisair, LLC*, No. H-12-817, 2013 WL 12137788, at *7 (S.D. Tex. Oct. 9, 2013) (issue of fact existed whether payroll accountant was exempt because employee's deposition testimony stated that her job was mostly data entry, that she did not supervisor anyone, and that she did not have authority to make financial decisions on behalf of company), *with Marski v. Courier Express One, Inc.*, No. 19 CV 4132, 2021 WL 4459512, at *38–39 (N.D. Ill. Sep. 29, 2021) (finding that summary judgment was appropriate because employee failed to identify any evidence in the record that contradicted employer's conclusive evidence of her duties).

then "the system calculates the majority of everything for you."[49]  She reviewed the timecards for accuracy, which Primera describes as mainly looking for arithmetic errors and missing data.[50]  If there was an error, Primera was required to contact a supervisor and could not correct timecards without permission.[51]  If there was a "huge discrepancy" in an employee's payroll, she would bring the issue to her supervisor, who gave her permission to cut a separate check until the issue was resolved.[52]  Primera states that her supervisors "had to review everything that I did."[53]

Bethel also states that Primera was "solely responsible" for ensuring that certified payrolls complied with state and federal legal requirements, whereas according to Primera's deposition, her only additional duty for certified payroll was entering the data into reporting websites.[54]  Bethel asserts that she had discretion to submit corrected certified payrolls, but Primera's testimony directly contradicts this.[55]  Based on Primera's deposition, a reasonable jury could conclude that Primera used specialized knowledge to "apply well-established techniques, procedures, or specific standards" for payroll processing, rather than an employee who had authority to independently choose from possible courses of conduct.[56]

---

[49] Docket 20-2 at 28.
[50] *Id.* at 28–30.
[51] *Id.* at 30–31.
[52] *Id.* at 32.  Primera's testimony suggests that this was a standard procedure.
[53] *Id.*
[54] *Id.* at 37–39.
[55] *Compare* Docket 20 at 7 *with* Docket 20-2 at 42–43.  Primera stated that she was required to submit the timecards as is, even if incorrect, then required to update them later through an established process.
[56] *See* 29 C.F.R. § 541.202(e); *Bothell*, 299 F.3d at 1129 (issue of fact existed whether remote field inspector was permitted to make independent decisions versus simply applying

Bethel next argues that Primera was an exempt employee because she was granted corporate Power of Attorney on all payroll tax matters and employment forms.[57] However, Primera testified that she was given the power of attorney because when letters came from the IRS about payroll tax, her supervisor often asked her "to find out what's going on with it, and [the power of attorney] gives you the ability to call the IRS and find out."[58] Bethel does not provide evidence to supports its assertion that Primera had authority to "deal with any problems."[59] Rather, Primera's deposition implies that she only had authority to call the IRS and report back to her superiors "what was going on,"[60] and, later, Primera testified that she did not commit her employer to any financial decisions.[61] The extent to which Primera was authorized to act on her power of attorney is an open question.[62]

Next, Bethel argues that Primera's role implementing new accounting and human resources software programs qualifies her as an exempt employee.[63] Bethel claims

---

specialized knowledge and skill); *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1055 (7th Cir. 2020) (issue of fact existed whether employee acted with autonomy or merely took direction from supervisors and implemented prescribed steps from manuals, scripts, and templates).

[57] Docket 20 at 29; *see also* Docket 20-13.
[58] Docket 20-2 at 112.
[59] Docket 20 at 9.
[60] Docket 20-2 at 112.
[61] Docket 23-4 at 322–23.
[62] *See Quintiliani v. Concentric Healthcare Sols., LLC*, 672 Fed. App'x 643, 645 (9th Cir. 2016) (issue of fact existed because, while parties agreed that employee had authority to approve higher rates of pay, the record did not indicate extent of discretion employee had to approve higher pay within established billed rates); *Guanzon v. Vixxo Corp.*, No. CV-17-01157-PHX-DWL, 2020 WL 619695 at *4–5 (D. Ariz. Feb. 10, 2020) (issue of fact existed whether employee's stated authority to adjust priority of service calls and authorize repair cost amounts was genuine, or if actual authority rested with her supervisor and was subject to strict protocols).
[63] Docket 20 at 30.

that Primera had "sole discretion to select a [H.R. software program], recommend it to management, and her recommendation was accepted by management."[64] For both the H.R. software and a different accounting software, Bethel claims that Primera was "responsible for its successful implementation" as the vendor's primary contact.[65] Again, Primera's deposition contradicts this characterization. She says that onboarding the accounting software was entirely done by the vendors, and that she "didn't personally onboard nothing."[66] According to Primera, she "was given direction by the controller or the CFO on what information [the vendor] needed," and then would provide that information.[67] With the H.R. software, Primera "was asked to go out and do research, and bring back the best possibilities for the timekeeping. [The executive team] looked it over and decided with that one."[68] Primera states that "[t]he only thing I did independently is I went out and did the research that they ask be done," and mentions that the research assignment had specific parameters.[69] There is a clear dispute as to the nature of Primera's involvement with both software implementations.

In addition to her deposition testimony, Bethel relies on Primera's January 15, 2020, email in which she stated that she "manage[s] all the payroll functions," "[has] gone through the new implementation of [the software program] independently,"

---

[64] *Id.*

[65] Docket 20 at 11, 30; *see also* Docket 20-37.

[66] Docket 20-2 at 120, *see also* 127–28 (describing that the vendors trained the employees and implemented the new system).

[67] Docket 20-2 at 121.

[68] *Id.*

[69] Docket 20-2 at 128; *c.f. Kollstedt v. Princeton City Sch. Bd. Of Educ.,* No. 1:08-cv-00822, 2011 WL 249496 at *11 (payroll supervisor was an exempt employee, in part, because the record showed that she was responsible for leading payroll software conversion).

*Primera v. Bethel Solutions, Inc.*                                                    Case No. 3:20-cv-00157-JMK
Order on Defendant's Motion for Summary Judgment                                        Page 12
Case 3:20-cv-00157-JMK   Document 27   Filed 01/05/22   Page 12 of 27

and manages a department.[70]  However, Primera testified that she exaggerated her role out of anger that she was denied her a raise.[71]  Bethel argues that Primera "admitted" in the email that she exercised discretion and independent judgment, and attacks the credibility of Primera's testimony to the contrary.[72]  Weighing evidence, especially when it involves witness credibility, is precisely the type of factual dispute that is inappropriate to resolve on summary judgment.

Bethel identifies a handful of other responsibilities that are not conclusively exempt work, even assuming they were Primera's "primary duty."[73]  Bethel argues that Primera's work with accounts receivable required independent judgment because Primera had to investigate which account the money should be applied.[74]  In Primera's deposition, she describes less than half of incoming accounts as requiring investigation, and for those, she "would have to go to either the supervisor or the CFO" to figure out where the payment should be applied.[75]  Bethel also highlights that at times, Primera took on "all" human resources duties for the company,[76] whereas Primera characterized this as processing paperwork for an interim period in 2019.[77]  Bethel argues that Primera "responded to

---

[70]  Docket 20-20.

[71]  *See* Docket 20-2 at 123–25; Docket 20-3 at 138–39, 151–53.

[72]  *See* Docket 20 at 14–15.

[73]  *See* 29 C.F.R. § 541.700(a) (an employee's primary duty is "the principal, main, major, or most important duty that the employee performs").

[74]  Docket 20 at 30.

[75]  Docket 20-2 at 50.

[76]  Docket 20 at 9; Docket 20-39.

[77]  Docket 20-2 at 102–03; *see also* Docket 20-39 at 2 (H.R. Director testimony that construction managers hired, evaluated, and terminated their own employees and that Bethel uses an outside H.R. firm).  *C.f. Marski,* 2021 WL 4459512 at *38-39.

employee's questions/concerns, which is why she had training in legal issues,"[78] but the email cited in support shows Primera, in one sentence, telling an employee that he did not need to fill out a new W-4 every year.[79] Based on Primera's testimony, a reasonable jury could find that she followed established procedures and basic direction from her superiors, sans independent decision-making, to process accounts receivables and H.R. paperwork.[80]

How Primera spent her time at Bethel is a question of fact.[81] Primera testified that she never developed any procedures, policies, and processes or assisted with financial planning.[82] She testified that everything she did was monitored by her supervisors, and that she had no authority to deviate from specific protocols and procedures.[83] Reviewing the evidence in the light most favorable to Primera, her deposition raises specific, factual disputes about the nature of her duties. As such, the Court does not need to address Primera's primary argument that since her job duties did not change, she could not be re-classified as an exempt employee.[84]

---

[78] Docket 20 at 31.

[79] Docket 20-10; *see also* Docket 20-3 at 166–67 (testifying that the email was not individualized advice but that she was just relaying objective information).

[80] *See also* 29 C.F.R. § 541.203(e) (H.R. personnel clerks who do not have discretion to deviate from policies set by superiors generally do not meet exemption requirements).

[81] *Bothell*, 299 F.3d at 1124.

[82] Docket 23-4 at 322–23.

[83] *Id.*

[84] *See* Docket 23 at 21–22. It is unclear if Primera is arguing that an employee who otherwise meets the requirements for an exemption cannot, as a matter of law, be classified as hourly, or if Primera is arguing that her previous duties as an hourly employee are merely useful evidence of whether she exercised discretion or independent judgment.

*Primera v. Bethel Solutions, Inc.*                                          Case No. 3:20-cv-00157-JMK
Order on Defendant's Motion for Summary Judgment                              Page 14
Case 3:20-cv-00157-JMK   Document 27   Filed 01/05/22   Page 14 of 27

**B.     Defendant Bethel is Entitled to Summary Judgment on Primera's Retaliation Claim under 29 U.S.C. § 215(a)(3)**

Primera alleges that Bethel's controller, Zounee Yang, fired her for (1) protesting her classification as an exempt employee and (2) complaining about allegedly illegal timekeeping methods.  Bethel is entitled to summary judgment in both regards.

**(1)     Retaliation under the FLSA**

The FLSA prohibits an employer from retaliating against an employee who complains of FLSA violations.[85]  To determine whether retaliation occurred, the court applies the *McDonnell Douglas* burden-shifting framework.[86]  First, the plaintiff must establish a *prima facie* case of retaliation.  To do this, the plaintiff must show that:  (1) the defendant was aware of plaintiff's participation in a protected activity under the FLSA; (2) an adverse employment action was taken against plaintiff; and (3) the protected activity was a substantial motivating factor in the adverse employment action as to that plaintiff.[87]  Alternatively, the plaintiff may present direct evidence of retaliation to establish her *prima facie* case.[88]

If the plaintiff succeeds in establishing her *prima facie* case, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate,

---

[85]  29 U.S.C. § 215(a)(3).

[86]  *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03 (1973); *Bowen v. M. Caratan, Inc.*, 142 F. Supp. 3d 1007, 1020 (E.D. Cal. 2015); *Spata v. Smith's Food & Drug Ctrs., Inc.*, 253 F. App'x 648, 649 (9th Cir. 2007) (applying burden shifting analysis to FLSA retaliation claim); *McGinest v. GTE Serv. Corp.,* 360 F.3d 1103, 1124 (9th Cir. 2004) (applying same to Title VII retaliation claim).

[87]  *Lambert v. Ackerley*, 180 F.3d 997, 1007 (9th Cir. 1999).

[88]  *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998).

*Primera v. Bethel Solutions, Inc.*                                          Case No. 3:20-cv-00157-JMK
Order on Defendant's Motion for Summary Judgment                                          Page 15
Case 3:20-cv-00157-JMK   Document 27   Filed 01/05/22   Page 15 of 27

nondiscriminatory reason for the challenged action."[89]  If the employer produces such evidence, the burden shifts back to the plaintiff to raise an issue of material fact as to whether the employer's proffered reasons for termination are mere pretext for unlawful retaliation.[90]

The employee can demonstrate pretext in two ways.  First, she may demonstrate pretext *indirectly* "by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable."[91] If showing pretext through indirect or circumstantial evidence, the employee must present "specific and substantial" facts showing that there is a genuine issue for trial.[92]  Second, the employee may show pretext *directly* by persuading the court that a discriminatory reason more likely motivated the employer.[93]  "Direct evidence is evidence which, if believed, proves the fact [of retaliation] without inference or presumption."[94]  Unlike circumstantial evidence, direct evidence need not be substantial; it can be "very little" to create a triable issue.[95]

### (2)   Plaintiff's complaint about timekeeping methods

Primera alleges that Bethel's controller, Zounee Yang, fired her because she complained of illegal timekeeping methods on March 3, 2020.  Here, Primera cannot

---

[89] *Hawn v. Exec. Jet Mgmt., Inc.,* 615 F.3d 1151, 1155 (9th Cir. 2010) (internal quotations and citations omitted).
[90] *Id.*
[91] *Noyes v. Kelly Servs.,* 488 F.3d 1163, 1170 (9th Cir. 2007) (quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1127 (9th Cir. 2000)).
[92] *Id.* (quoting *Godwin,* 150 F.3d at 1222).
[93] *Id.* (quoting *Chuang*, 225 F.3d at 1127).
[94] *Godwin,* 150 F.3d at 1221.
[95] *Id.*

establish a *prima facie* case of retaliation because she did not engage in protected conduct under the FLSA.

The FLSA's anti-retaliation provision provides that an employer may not discharge an employee who has "filed any complaint or instituted or caused to be instituted any proceeding *under or related to this chapter*."[96] To fall within this provision, "a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as *an assertion of rights protected by the statute* and a call for their protection."[97]

According to Primera's deposition, a Bethel project manager asked to submit a timecard on behalf of a Hispanic employee who was not fluent in English, and therefore had difficulty understanding the company's electronic timekeeping system.[98] Primera told the project manager that this was not allowed, which triggered a heated altercation. Primera then told controller Yang about the altercation, including her opinion that the project manager could not legally submit a timecard on behalf of another employee. Yang disagreed that the conduct was illegal and told Primera to allow the project manager to submit the timecard. Yang then accused Primera of racism against the Hispanic employee.

---

[96] 29 U.S.C. § 215(a)(3) (emphasis added).

[97] *Rosenfield v. Globaltranz Enters.*, 811 F.3d 282, 284 (9th Cir. 2015) (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011)) (emphasis added).

[98] Primera's Opposition contradicts her testimony on who was attempting to sign the employee's timecard. Her Opposition states that the Bethel project manager, Kathy Scherer, was requesting permission for a third employee, Andrew Garsha, to fill out the timecard on behalf of the English-learning employee. *See* Docket 23 at 12–13, 24 (citing Docket 20-3). Primera's deposition states that the Bethel project manager, Kathy Scherer, was the one requesting to fill out the timecard. *See* Docket 20-3 at 276–81. While the identity of the employees does not affect the Court's reasoning, the Court assumes that Primera's deposition, to which the Opposition cites, is accurate.

Primera ended the conversation and reported the conflict to Bethel's Human Resources Manager, Rachel Balluta.[99]  Primera was terminated later that afternoon.[100]

In both her deposition testimony and in her Opposition, Primera does not articulate which—or whose—right under the FLSA she was asserting.  In her deposition, Defendant's counsel asked Primera which statute makes it illegal for an employee to "call-in" their time to someone else, so long as the timecard is accurate.  Primera could not identify a law, and further admitted that she did not cite any law to Yang on March 3, 2020, besides asserting that the conduct was generally illegal.[101]  She explained that although job superintendents routinely fill out their employees' timecards for the employees to sign, here, the project manager was not physically at the work site and the employee did not sign the timecard himself.[102]  Primera alleged that this was illegal because the timecard is a legal document, and because the project manager had no personal knowledge of the hours that the employee reported to her.[103]

This is not an FLSA violation.  The FLSA requires that employers maintain accurate records, but it does not specify how those records must be collected.[104]  Indeed, "[t]he Act requires no particular form for the records. . . . Employers may use any

---

[99]  Docket 20-3 at 277–78.  Primera testifies that Balluta agreed that the project manager could not submit the timecard on behalf of the employee, she but does not indicate on what grounds Balluta based her opinion.  While Balluta's opinion may have bolstered Primera's belief that the conduct was generally illegal, it does not affect whether Primera asserted a right protected by the FLSA.

[100]  *See also* Docket 23-17.

[101]  Docket 20-3 at 281–83.

[102]  *Id.* at 280–81.

[103]  *Id.* at 280–81; *see also* Docket 23 at 24.

[104]  *See* 29 U.S.C. § 211(c); 29 C.F.R. § 516.

timekeeping method they choose.  For example, they may use a time clock, have a timekeeper keep track of employee's work hours, or tell their workers to write their own times on the records.  Any timekeeping plan is acceptable as long as it is complete and accurate."[105]  Primera did not complain to Yang that the employee's timecard was inaccurate or that his wages were being stolen; if anything, her testimony suggests that the employee had the *potential* to *exaggerate* his hours to the project manager.[106]  She did not complain that Bethel was violating minimum wage or maximum hour requirements, or that the project manager was forging or otherwise changing the employee's reported hours.

Not every generalized complaint about an employment practice is protected conduct under the Act; rather, "the complaints must specifically concern FLSA violations and must be directly communicated to the employer."[107]  There simply is no legal requirement under the FLSA that an employee sign and submit his or her own timecard, and if Primera was concerned about another provision of the FLSA, she did not communicate this to Yang.[108]  Therefore, Primera was not asserting an FLSA right on behalf of the employee.

---

[105] Dep't of Labor, Wage and Hour Div., Fact Sheet #21: Recordkeeping Requirements under the Fair Labor Standards Act (FLSA) (Jul. 2008).

[106] Docket 20-3 at 280–81.

[107] *Hardwick v. Complete Skycap Servs., Inc.*, 247 F. App'x 42, 43–44 (9th Cir. 2007) (citing *Lambert v. Ackerley,* 180 F.3d 997, 1007 (9th Cir. 1999) (en banc) ("[N]ot all amorphous expressions of discontent related to wages and hours constitute complaints filed within the meaning of § 215(a)(3).")); *see also Richard v. Carson Tahoe Reg'l Healthcare*, 635 Fed. App'x 371, 372 (9th Cir. 2016) (complaint about employer's failure to provide breaks was not protected conduct because the FLSA does not require employer to provide breaks); *Traver v. Tucson Unified Sch. Dist.*, 376 F. App'x 799, 800 (9th Cir. 2010) (request for additional pay was not protected activity).

[108] *See Rosenfield*, 811 F.3d at 284.

In her Opposition, Primera appears to argue that she was asserting her *own* rights under the FLSA. Primera reiterates that an employee may not submit a timecard on behalf of that employee if that employee has no "true knowledge" of the hours worked.[109] Instead of citing to law, the Opposition merely states that "[t]he illegality of the conduct that Yang requested is clear on its face."[110] However, the Opposition's Factual Background states that "[a] principal concern that Primera had concerning [the request] was that the payroll in question was a certified payroll, which required Primera to swear that she believed all the numbers in the time card were true and accurate."[111] As Primera identified in her deposition, certified payroll requirements are governed by the Davis Bacon Act.[112] Even if Primera reasonably believed Bethel's conduct was illegal, she understood this alleged right to be protected by the Davis Bacon Act, not the FLSA.[113]

Because Primera's objection was not sufficiently clear and detailed such that a reasonable employer would understand it "as an assertion of rights protected by the [FLSA]," she did not file a complaint under the statute.[114] This is particularly true given

---

[109] Docket 23 at 24.

[110] *Id.*

[111] *Id.* at 13–14.

[112] Docket 20-2 at 38–40.

[113] *See* 29 U.S.C. § 215(a)(3) (anti-relation provision applies to complaints under or related to the FLSA); *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 894–95 (7th Cir. 2018) (attorney's letter alleging the "illegal nature of the actions and discipline" and email alleging conduct "against federal law" was too vague to notify a reasonable employer of a suspected FLSA violation).

[114] *Kasten*, 563 U.S. at 14.

Primera's duty to review certified payroll records for accuracy.[115]  Thus, she fails to establish a *prima facie* case of retaliation.

### (3)    Plaintiff's complaint about exempt status

Primera separately alleges that she was terminated because she complained that she was improperly classified as an exempt employee.  While Primera raised this issue multiple times since 2017, she alleges that her email on January 15, 2020, and the subsequent conversation with CFO Kyunga Rose, constituted a complaint under the FLSA and was the reason for her termination on March 2, 2020.[116]  Assuming, *arguendo*, that Primera established a *prima facie* case, Bethel has provided legitimate reasons for her termination which Primera fails to show are pretextual.

### (a)    *Non-discriminatory reasons*

Bethel identifies multiple reasons for Primera's termination, supported by substantial evidence.  First, Primera's January 15, 2020, email contained an unprofessional tone and violated the employee handbook by discussing other employees' compensation.[117]  After receiving the email, CEO Ana Hoffman and CFO Kyunga Rose exchanged a series of texts in which they discuss terminating Primera due to the email's "insulting" tone, the fact that "managing her takes up valuable time," the inappropriateness of comparing herself other employees, and concerns that Primera routinely discloses other employees' pay raises

---

[115] *See Rosenfield,* 811 F.3d at 286–87 (an employee's job title and responsibilities are "context" to evaluate whether a reasonable employer may have understood the employee as filing a complaint under the FLSA).

[116] Docket 1-3 at 2; Docket 23 at 23–25.

[117] Docket 20 at 23, 37; *see also* Docket 20-37; Docket 20-5.

to the workplace.[118]  The texts do not mention Primera's exempt status or complaints about

her salary.  Hoffman and Rose discuss plans to train other employees in payroll to replace

Primera; however, Hoffman testified that she and Rose ultimately decided "to let the matter

rest."[119]

Next, Hoffman testified that Primera had "obvious performance issues" that

led to a significant error in PTO accounting.[120]  For an external audit conducted in February

2020, controller Zounee Yang asked Primera to provide a statement of the employees' total

accrued leave.  Primera's report overstated the leave balance by $276,801.56, which she

was unable to reconcile and caused "a significant overstatement of expense on the audit."[121]

Bethel provides multiple emails from the external auditor to Yang in which the auditor

identifies the $276,801 discrepancy, suggests that accrued PTO balances had not been

adjusted since 2018, reports that he "was unable to agree any of the samples provided to

the hours amount per the new PTO schedule," and advises that "a more accurate method

of tracking PTO should be implemented."[122]

On February 25, 2020, Yang emailed Bethel's H.R. Manager to express her

frustration over Primera's performance since Yang became controller:

> This is what I am talking about, is that she doesn't take
> the initiative and move forward without me having to go to
> Joyce. . . . There is no reason why she should be sending me
> around in circles.  I am very frustrated. . . . These are the minor
> things that she can handle base[d] on her permission roles and

---

[118] Docket 20-22.
[119] Docket 20-37 at 4; *see also* Docket 20-38 at 2.
[120] Docket 20 at 23; Docket 20-37.
[121] Docket 20-37 at 4; Docket 20-38 at 2.
[122] Dockets 20-23; 20-24; 20-25; 20-26.

duties. . . . I'm just letting you know that this isn't the first time and I've dealt with this issue this whole 2 months."[123]

The email was in relation to Primera providing documents for the audit and granting timecard access to accommodate the English-learning employee, as discussed above.

Last, Hoffman claims that Primera "attempt[ed] to undermine" Yang on February 14, 2020.[124] Hoffman testifies that she witnessed Primera attempt to delegate one of her tasks to Yang during the audit, and that "[i]t was apparent to me that Ms. Primera was being insubordinate by attempting to assign inappropriate tasks to her new supervisor, and in my opinion attempting to overwhelm and overburden her."[125]

At that point, Hoffman testifies that she gave CFO Rose permission to "start re-staffing her payroll department, meaning that she could commence a process to replace Ms. Primera" in late February 2020.[126] Indeed, on February 21, 2020, Hoffman emailed Primera that a new employee would take over the credit card coding.[127] Four days later, Hoffman emailed Primera asking to train another employee on payroll, stating that she would take over that responsibility.[128]

Around that time, Hoffman states that she discovered that Primera again had disclosed one employee's raise to another employee, in violation of the employee

---

[123] Docket 20-27.
[124] Docket 20 at 23, 37.
[125] Docket 20-37 at 5.
[126] *Id.*
[127] Docket 20-32.
[128] Docket 20-33.

*Primera v. Bethel Solutions, Inc.*                                    Case No. 3:20-cv-00157-JMK
Order on Defendant's Motion for Summary Judgment                                    Page 23
Case 3:20-cv-00157-JMK   Document 27   Filed 01/05/22   Page 23 of 27

handbook.[129]   According to Hoffman, this "confirmed" her decision to terminate Primera.[130]

### (b)    Evidence of pretext

Bethel has met its burden to provide evidence of a legitimate, non-retaliatory motive for Primera's termination.  Primera must show that these reasons are pretextual, either with "specific and substantial" indirect evidence, or direct evidence of discriminatory motive.[131]  Primera has not met this burden.

Primera cites a smattering of circumstantial evidence.[132]  Primera first identifies evidence that might, at most, establish a *prima facie* case:  (1) there was "adequate closeness in time" between Primera's complaints and her March 2nd termination;[133] (2) Bethel failed to provide a specific reason on Primera's termination documents, simply citing its "at-will" employment policy;[134] and (3) her January 15th email illustrates "a significant push and pull" over her exempt status.[135]  This is insufficient to cast doubt on Bethel's proffered reasons for Primera's termination.[136]  In particular, while Primera asserts that her January 15th email is direct evidence of Bethel's retaliatory motive, Primera herself wrote the email and her supervisors did not respond, let alone

---

[129]   Docket 20 at 19; Docket 20-37.
[130]   Docket 20-37 at 6.
[131]   *See Noyes*, 488 F.3d at 1170.
[132]   Docket 23 at 23–26.
[133]   *Id.* at 24.
[134]   *Id.* at 22–24; Docket 23-17.
[135]   Docket 23 at 23.
[136]   *Godwin*, 150 F.3d at 1221 (evidence of pretext must go beyond merely establishing *prima facie* case to create a triable issue); *Kasten*, 563 U.S. at 974 (temporal proximity is insufficient to create a triable issue).

*Primera v. Bethel Solutions, Inc.*                                          Case No. 3:20-cv-00157-JMK
Order on Defendant's Motion for Summary Judgment                                      Page 24
Case 3:20-cv-00157-JMK   Document 27   Filed 01/05/22   Page 24 of 27

comment on her exempt status or salary. Further, the text exchange between Rose and Hoffman indicates that their concern with Primera's email was unrelated to her exemption.[137]

Next, Primera argues that Bethel mischaracterized her job performance.[138] She repeatedly states that Bethel did not produce documents that show her superiors were unhappy with her performance. Without citing specific exhibits, she claims that the emails from CEO Hoffman and the auditors show that her performance was "excellent."[139] This is incorrect, as Bethel produced multiple emails and texts which show her supervisors had serious concerns with her conduct, discussed above.

Primera cites to her deposition, in which she testified that controller Yang was "lying" about her poor performance.[140] However, even if Primera did, in truth, calculate the PTO correctly, the various emails provided by Bethel show that Yang reasonably believed Primera to be responsible.[141] Moreover, Primera admits that she did receive negative feedback on the PTO accrual report, stating that "[Yang] said [the auditors] kept saying it wasn't right," and that the auditors "didn't understand how it came to what it is."[142] The Court acknowledges that Primera appears unaware that her

---

[137] *See* Docket 20-22.
[138] Docket 23 at 25–26.
[139] *Id.* at 10, 25–26.
[140] *Id.* at 25–26 (citing Docket 23-4 at 247–49).
[141] Dockets 20-23; 20-24; 20-25; 20-26; 20-27; *see Villiarimo v. Aloha Island Air Inc.,* 281 F.3d 1054, 1063 (9th Cir. 2002) ("Courts only require that an employer honestly believed its reason for action, even if its reason is foolish or trivial or even baseless."); *see also id.* at 1061 (uncorroborated and conclusory testimony, without more, will not create a genuine issue of fact that precludes summary judgment).
[142] Docket 20-3 at 195–96.

supervisors were unhappy with her performance, and did not appear to receive any formal feedback, even as her supervisors internally contemplated her termination. While this might constitute less than ideal management by her supervisors, it is not specific and substantial evidence that Bethel's proffered and well-documented reasons for termination are not worthy of credence.

Finally, Primera identifies an alleged inconsistency in CEO Hoffman's testimony.[143] In her affidavit, Hoffman states that Primera's termination had "been set in motion" with an outside human resources vendor and that she was informed Primera would be terminated on March 2, 2020.[144] In a February 21, 2020 email, Hoffman suggests that Primera train an employee the week of March 9th.[145] Primera argues that this shows Hoffman had not actually planned to terminate Primera on March 2nd.

However, this is not inconsistent with the testimony, and it does not show retaliation for Primera's January 15th email or conversation with Rose. Hoffman's affidavit does not indicate *when* she learned that Primera would be terminated on March 2nd; rather, she states that she decided to begin the process of restaffing on February 14th and that she eventually was informed that Primera would be terminated on March 2nd. It is entirely consistent that Primera's termination date was established after February 21st. More importantly, this alleged inconsistently does not show retaliation for

---

143 Docket 23 at 11, 25.
144 Docket 20-37.
145 Docket 23-16.

Primera's conduct in January. If anything, it suggests that events expiring after February 21st motivated an earlier termination date.[146]

Even assuming Primera established a *prima facie* case of retaliation, she did not provide any direct evidence or "specific and substantial" indirect evidence that Bethel's legitimate reasons for termination are pretextual. Bethel is entitled to summary judgment on Primera's FLSA retaliation claim.

## IV. CONCLUSION

For the above reasons, Defendant's motion is **DENIED** with respect to Plaintiff's claim that she was improperly classified as an exempt employee and denied overtime under 29 U.S.C. § 207. Defendant's motion is **GRANTED** with respect to Plaintiff's claim that she was retaliation against under 29 U.S.C. § 215(a)(3).

**IT IS SO ORDERED** this 5th day of January, 2022, at Anchorage, Alaska.

*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
United States District Judge

---

[146] Primera appears to allege that the inconsistency shows retaliation for both the January 15th email and the altercation with Zounee Yang on March 2, 2020. Whether it shows retaliation for the altercation on March 2nd is irrelevant because, as discussed, this was not protected activity under the FLSA.